FRANCIS E. TOWER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1429. Promulgated March 3, 1944.

*Oscar E. Waer, Esq.,* and *Frank E. Seidman, C. P. A.,* for the petitioner.

*Melvin S. Huffaker, Esq.,* for the respondent.

## OPINION.

HARRON, *Judge*: The only question for determination is whether petitioner is taxable upon his wife's distributive share of the net income of the R. J. Tower Iron Works, which was organized as a limited partnership under Michigan law. Under the partnership agreement, petitioner is a general partner and his wife is a limited partner.

Petitioner contends that his wife contributed 39 percent of the assets of the former corporation to the capital of the partnership and that she is a bona fide member of the partnership, entitled to receive a fixed share of its net income, based upon her capital contribution. He argues that the source of her capital contribution and the fact that she rendered no services to the partnership are immaterial to the determination of the question.

Respondent contends that the wife was not a bona fide member of the partnership, in that the partnership was not formed for any purpose

other than minimizing petitioner's tax. He points out that the wife knew nothing of the business and contributed no services to the business. His argument is that, for Federal tax purposes, the gift of corporate stock by petitioner to his wife was unreal and a sham, and wholly ineffective to relieve petitioner from tax liability on the partnership income reported by the wife.

Petitioner concedes that his wife knew nothing of business matters and in that respect relied entirely upon him. He admits that she knew very little about the business of the R. J. Tower Iron Works and that she contributed no services to that company. He also admits that the change from the corporate structure to the partnership was made largely for tax purposes, and that his gift of corporate stock to his wife was made to determine her interest in the partnership.

It is well settled that transactions between husband and wife whereby tax is minimized are subject to rigid scrutiny, "for the temptation to escape the higher surtax brackets by an apportionment of income inside the family is a strong one." *Champlin* v. *Commissioner*, 71 Fed. (2d) 23, 26. Family arrangements resulting in the reallocation of income within the family unit should require clear and convincing evidence to support their *bona fides*, and the testimony of the participants in the transaction must clearly establish that the particular transaction is genuine and made in good faith. *Harry C. Fisher*. 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014.

A careful analysis of the testimony of this proceeding leads us to the conclusion that petitioner did not make a valid gift of the corporate stock to his wife in that he did not absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift. The essential elements of a bona fide gift *inter vivos* are: (1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee; *Edson* v. *Lucas*, 40 Fed. (2d) 398, and authorities there cited. Cf. *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287; *Edwin J. Marshall*, 19 B. T. A. 1260; affd., 57 Fed. (2d) 663; certiorari denied, 282 U. S. 61.

In the light of the testimony of petitioner and his wife, the evidence indicates that petitioner did not intend making a gift of the stock; that he did not intend to divest himself of such title, dominion, and

control of the stock as was necessary to constitute a good and valid gift thereof, *in praesenti*; and that the transfer was not such that the entire dominion and control of the gift was in the wife.

Petitioner testified that the subject of the gift to his wife was 190 shares of the corporate stock owned by him. He further testified that a certificate of this stock was delivered to his wife and that the transfer was noted on the stock record book of the corporation. He then testified that the reason for the gift was the "changeover" to the partnership and that the corporate assets were transferred directly from the corporation to the partnership. The testimony of petitioner's wife, on the other hand, was confused and at times contradictory. She first testified that the stock of the corporation was given to her with the understanding that it was going to be put back in the partnership. She then testified that the subject of the gift was not stock in the corporation, but an interest in the partnership; that no stock certificate was delivered to her, but that her interest in the business was "just credited to me on the books." Subsequently, she testified that petitioner gave her a typewritten certificate for 190 shares of the corporate stock, and that she retained the certificate for three days until the partnership was formed, whereupon she returned it to her husband.

Under these circumstances, it is our opinion that petitioner did not relinquish control of his stock nor did petitioner's wife gain control over any of it at any time. There was no unconditional gift of the stock to her, since she could only use it in one way, namely, to place the corporate assets which the stock represented into the partnership. Petitioner never intended that his wife should have the 190 shares of stock to do with absolutely as she pleased. Upon the dissolution of the corporation, she was not free to sell or otherwise dispose of her share of the corporate assets. As a matter of fact, she never received her proportionate share of the assets, but they were all transferred directly to the partnership.

We think the principle underlying the decision in *F. Coit Johnson*, 33 B. T. A. 1003; affirmed in *Johnson v. Commissioner*, 86 Fed. (2d) 710, is applicable to the situation here. The question in that case related to the legal effect of a gift of a $400,000 bank check made by a taxpayer to his wife pursuant to a plan whereby the funds were made the corpus of a trust and immediately loaned to the husband upon his unsecured interest-bearing note. The taxpayer paid interest on the note and claimed a deduction from income for the same on his return. The Circuit Court of Appeals held that there was no bona fide gift by the taxpayer to his wife, and said:

Counsel for the petitioner asserts that the transactions above described resulted in the following legal relations: Mr. Johnson made an absolute and unconditional gift of $400,000 to his wife; with her own property she set up a trust having a capital of $400,000; the trustee loaned this sum to Mr. Johnson upon his demand

note bearing interest, and he paid sucn interest to the trustee in 1931. If such were indeed the legal relations of the parties, it would follow as' of course that the taxpayer should be allowed the claimed deduction, for it is too well settled to require discussion that legal transactions cannot be upset merely because the parties have entered into them for the purpose of minimizing or avoiding taxes which might otherwise accrue. * * * Despite such purpose, the question is always whether the transaction under scrutiny is in reality what it appears to be in form. * * *

But there is a fallacy in the petitioner's contention, and it lies in the premise that he made an absolute and unconditional gift of $400,000 to his wife, and that her money set up the funded trust. There was an agreement between them that the money he made available to her was to be used in only one way; she was to pass it to the trustee upon terms which bound the trustee to return it to him upon request. Everything was done at the same time and as part of one transaction. Not for an instant did Mr. Johnson lose control of his "gift", nor did Mrs. Johnson or the trustee have possession of it free from a duty to return it to him. * * *

See also *Guaranty Trust Co. (N. Y.) et al., Executors*, 35 B. T. A. 916; affd., 98 Fed. (2d) 62; *J. L. McInerney*, 29 B. T. A. 1; affd., 82 Fed. (2d) 665; *Adolph Weil*, 31 B. T. A. 899; affd., 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Empire Trust Co. et al., Executors*, 41 B. T. A. 839; affd., 119 Fed. (2d) 421; *George H. Whiteley, Jr.*, 42 B. T. A. 402; affd., 120 Fed. (2d) 782; certiorari denied, 314 U. S. 657.

Here, the transfer of the corporate stock by petitioner to his wife was more fanciful than actual, since there was no purpose to transfer the stock to her apart from the agreed plan that the gift would determine her interest in the partnership. The gift, however, was not an absolute and unconditional one. Its purpose and intent was not to vest absolute dominion over the shares in the wife, since she had no untrammeled freedom in their disposition and they were not subject to her own control and desires.

In view of the fact that the gift of the corporate stock by petitioner to his wife was not valid and complete, it follows that she made no capital contribution to the partnership, and, since she admittedly rendered no services, it must be held that she was not a bona fide partner.

It should also be noted that the dissolution of the corporation and the subsequent formation of the partnership fulfilled no business purpose other than the savings of tax to petitioner. The change did not add any new capital to the business. As a matter of fact, the company was long established, in good financial condition, and did not need additional capital. Since the death of petitioner's father in 1927, the business had been directed and managed solely by petitioner. In large measure, the success of the business was due to his personal efforts and ability. Under the corporate form of doing business, petitioner was president and general manager of the corporation and owned approximately 90 percent of the stock. Amidon kept the books of the company and worked under petitioner's supervision. After the partner-

ship was formed petitioner and Amidon became general partners, but petitioner still continued to control and actively direct the affairs of the company. Petitioner still owned 90 percent of the business. After the formation of the partnership, the business had the same capital, the same assets, the same liabilities, the same management, the same plant, the same customers, the same employees, and the same name. In *Gregory* v. *Helvering*, 293 U. S. 465, the Court disregarded a transfer of assets which was made without a business purpose and solely to reduce tax liability. In that case, the Court held that the Government may look at actualities, and, upon a determination that the form employed for doing business or carrying out the challenged tax event was unreal or a sham, it may disregard the effect of the fiction. In *Higgins* v. *Smith*, 308 U. S. 473, the Court reiterated the same rule, holding that, while a taxpayer was free to voluntarily choose any organization for the conduct of his business, the Government was not required to acquiesce in that election if in fact that method of doing business was unreal. In *Helvering* v. *Clifford*, 309 U. S. 331, the Court, in holding that a device to break up one economic unit into two or more would not be conclusive on the Government under the income tax law, said:

\* \* \* For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group.

In *Harrison* v. *Schaffner*, 312 U. S. 579, the Court pointed out that taxation is a practical matter, dependent not upon "attenuated subtleties," but rather upon practical considerations. It was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another. In *Helvering* v. *Horst*, 311 U. S. 112, the Court said:

\* \* \* The dominate purpose of the revenue laws is the taxation of income to those who earn it or otherwise create the right to receive it. \* \* \*

At the time the partnership was first contemplated, petitioner discussed the arrangements with his wife before consulting Amidon. Petitioner testified that Amidon did not object to the contemplated partnership, since "he wasn't in position to object because I have done quite a little for Mr. Amidon." He also testified that Amidon knew he was not taking a great risk in entering the partnership. There can be little doubt that for all practical purposes, the business of the R. J. Tower Iron Works was petitioner's business both before and after the partnership was organized. After the first year of the partnership neither petitioner nor Amidon drew any salary from the business, although both devoted their full time and energy to the business. The sole compensation of each was his distributive share

of the net income. As a result of the arrangements, petitioner's wife received a full share of the partnership income even though she contributed neither time nor service to the business. This arrangement was unusual and unreal, especially in view of her limited liability.

The only record of withdrawals by the partners are for the fiscal years 1938, 1939, and 1940. During these years petitioner's wife withdrew substantial amounts from the partnership. During this period she maintained a savings account and a checking account, and the balance of the withdrawals was placed in cash in a safe maintained in her home to which petitioner had access. Respondent attempted to subpoena the records of the checking account, but was unable to do so because the wife testified that the checks were destroyed by her at the end of each year. However, the record indicates that for the taxable year 1940 she withdrew $5,000 from the business. Of this amount, the sum of $1,403.88 was paid by the wife to petitioner for expenditures which he had made in paying his wife's income tax and various other expenses. During that year she expended $3,000 toward the purchase and furnishing of a summer cottage used by her family. Petitioner contributed approximately $2.000 toward this purchase. Petitioner and his wife also purchased war bonds monthly, each contributing 50 percent toward the purchase price. We think that these purchases toward which the wife made substantial contributions were those usually assumed by a husband for the welfare of his family, and that the withdrawals by the wife from the partnership were merely for the reallocation of income within the family to be used for the benefit of the family.

In this proceeding, petitioner's wife made no actual contribution to the capital of the partnership, contributed no services, had no voice in the conduct of the business, and received a portion of the profits, not as a partner, but only by reason of her marital relationship. See *Mead* v. *Commissioner*, 131 Fed. (2d) 323, certiorari denied, 318 U. S. 777; *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied. 318 U. S. 764; *Schroder* v. *Commissioner*, 134 Fed. (2d) 346; *Francis Doll*, 2 T. C. 276. Under the facts it is held that there was no real partnership between petitioner and his wife for the conduct of a business enterprise and that petitioner was the person who earned the income which was credited to the wife's account. Therefore petitioner is taxable on the income attributed to the wife. Respondent's determination is sustained.

In view of the foregoing, it is unnecessary to consider respondent's alternative contention. Accordingly,

*Decision will be entered for the respondent.*