Irene McCullough, An Individual, v. Commissioner. R. Verne McCullough, An Individual, v. Commissioner.
McCullough v. Commissioner
Docket Nos. 1710, 1711.
United States Tax Court
1944 Tax Ct. Memo LEXIS 178; 3 T.C.M. (CCH) 712; T.C.M. (RIA) 44236; July 19, 1944
*178 Woodrow D. White, Esq., 501 Walker Bank Bldg., Salt Lake City, Utah, and R. Verne McCullough, pro se, Kearns Bldg., Salt Lake City, Utah, for the petitioners. T. M. Mather, Esq., and C. S. Winters, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax for the years 1940 and 1941 against Irene McCullough in the respective amounts of $362.69 and $3,446.10, and against R. Verne McCullough in the respective amounts of $467.14 and $3,242.70. Certain adjustments made by the respondent are not contested. The sole issue now in controversy is whether each petitioner is properly taxable with 50 per cent of the net income of a partnership known as R. Verne McCullough Enterprises. There is no dispute concerning the amount of the net income of the partnership. Findings of Fact The petitioners are husband and wife, residing in Salt Lake City, Utah. Their Federal income tax returns for the years in controversy were filed with the Collector of Internal Revenue for the district of Utah. For convenience, the petitioners will hereinafter sometimes be referred to as McCullough and Mrs. McCullough. For some years prior *179 to 1940, McCullough, who was also a practicing attorney, had been active in several business enterprises, consisting mainly of bowling alleys and billiard rooms which he operated as an individual or in conjunction with others. He was also the owner of some unimproved real estate in Salt Lake City. During the same period, Mrs. McCullough was the owner of several parcels of improved real estate in Salt Lake City and Ogden, Utah. A part of this was rented by her husband, in which he operated his businesses, and the remainder was leased to various merchants and mercaantile companies. On December 31, 1939, the petitioners and William M. McCullough, father of R. Verne McCullough, executed articles of partnership, the pertinent provisions of which follow: "Articles of co-partnership made the 31st day of December, 1939, between Irene McCullough of Salt Lake City, Utah, R. Verne McCullough of Salt Lake City, Utah, and William M. McCullough of Salt Lake City, Utah, as follows: "The said parties, for the purpose of forming a co-partnership, agree with each other as follows, to-wit: "1. The name of this co-partnership shall be the R. VERNE McCULLOUGH ENTERPRISES. "2. The partnership shall *180 begin on the 2d day of January, 1940, and continue forty (40) years, ending on the 2d day of January, 1980, unless otherwise dissolved by the mutual consent of the parties hereto or by operation of the general law of partnership, or by the death of any partner or his assigns. "3. The pursuit and purpose of this partnership is, and shall continue to be, to carry on and conduct any kind of business in all its branches to the same extent and as fully as any individual person might do or could do in the State of Utah, or any other State, country or place; to acquire, own and operate any merchandise business; to buy, sell, export, import and distribute any and all kinds of merchandise, either wholesale or retail; to carry on and conduct bowling alleys, billiard rooms, restaurants, and any and all other kinds and types of recreational establishments; to carry on and conduct manufacturing plants in all its branches and all other kindred enterprises; to carry on and conduct general real estate business in all its branches; to apply for, secure, acquire by assignment, transfer, purchase, or otherwise, and to exercise, carry out and enjoy and charter, license, power, authority, franchise, *181 concession, rights or privileges, which any government or authority or any corporation or other public or private body may be empowered to grant; and to pay for, aid in and contribute towards carrying the same into effect, and to appropriate any of the partnership's assets to defray the necessary costs, charges and expenses thereof. "And in order properly to prosecute the objects and purposes set forth herein, the partnership shall have full power and authority to purchase, lease and otherwise acquire, hold, mortgage, convey and otherwise dispose of all kinds of property, both real and personal, both in this state and in all other states, territories and dependencies of the United States; to purchase the business, good-will and all other property of any individual, co-partnership, firm or corporation as a going concern, and to assume all its debts, contracts and obligations; to construct, equip and maintain buildings, works, factories and plants; * * *. "It is further agreed that the partnership assets may be held in the individual name of any partner in trust for said partnership." * * * * *
"5. The capital assets of said partnership shall consist of the following described real *182 property, and all improvements and appurtenances thereto belonging, including any and all business now operated on said property by any or all of said partners: [There follows a description of the properties and businesses owned by the petitioners.] 'It is expressly understood that all of said capital assets are hereby transferred to said partnership by the said R. Verne McCullough and Irene McCullough; that all right, title and interest of the said R. Verne McCullough and the said Irene McCullough are transferred to said partnership on a basis of share and share alike in said partnership, subject to a working partnership interest of said William M. McCullough, as more particularly hereinafter set forth. "That the reasonable market value of said partnership assets as of date hereof, is Two Hundred Twenty-Five Thousand (225,000) Dollars, after deducting mortgage indebtedness and other incumbrances against said property. "6. It is understood that all income and profits derived from said property, with the exception of what each partner is entitled to draw out, as hereinafter mentioned, is to be divided share and share alike between said R. Verne McCullough and Irene McCullough, *183 on their assigns. "7. In consideration of the long and faithful services rendered by the said William M. McCullough to the said R. Verne McCullough and Irene McCullough, in consideration of his continued service in the management of the partnership interests, the parties hereto agree that the said partner William M. McCullough shall receive ten per cent (10%) of the net profits of said partnership business, together with any other compensation which said partnership may award him from time to time for services rendered said partnership. "8. It is further agreed by the partners hereto that any partner may be awarded compensation for services rendered said partnership in addition to their specified percentage of the partnership net returns, as provided herein. Such additional compensation must be voted by individual partners holding a majority interest in said partnership. "9. It is understood and agreed that all losses shall be borne by the partners hereto as their interests may appear, namely, forty-five (45%) per cent by R. Verne McCullough, forty-five (45%) per cent by Irene McCullough, and ten (10%) per cent by William M. McCullough, it being definitely understood, however, that *184 this prorata of losses shall in nowise be considered to abrogate the general law of partnership pertaining to profits and losses, but that each partner shall be responsible for all the losses which may be incurred by said partnership. "10. At the expiration of each and every month from the commencement of this partnership, or oftener, by the requesting in writing by one partner to the others, an account of stock, effects, credits, debts, and all transactions shall be taken, and the true condition of the partnership, as far as possible, arrived at, and each partner agrees to lend his aid and services to effect this object. "11. In the case of the determination of this partnership, from whatever cause, the parties hereto agree that they will make a true, just and final account of all things relating to said partnership business, and in all things duly adjust the same; and after all the affairs of the partnership are adjusted, and its debts paid off and discharged, then all the assets so remaining, either in monies, goods, fixtures, or otherwise, shall be divided share and share alike between the said R. Verne McCullough and Irene McCullough, or their assigns. "12. It is expressly *185 understood by the parties hereto that the said R. Verne McCullough and Irene McCullough may sell or bequeath any or all of their partnership interest to their children, in such proportion as they may determine. It is further expressly provided that upon the sale or gift of any such interest by the said R. Verne McCullough or Irene McCullough, that the donee or transferee will become a partner in said business and participate in the profit and losses of the same as his share may bear to the entire partnership assets at the time of said gift or transfer, except as otherwise provided herein, or through operation of the general law of partnership. "13. It is expressly understood that this agreement is to be construed as a general partnership agreement and it is not the understanding or intent of any of the parties hereto that the same will be interpreted as a limited partnership or association of any kind whatsoever." After the formation of the partnership, the businesses which had been operated by McCullough and the real estate operations which had been conducted by Mrs. McCullough were carried on as partnership operations. Legal title to the realty was not transferred to the partnership *186 as such, but remained in the names of the individual partners. On January 2, 1940, an "addendum" to the partnership agreement was made, providing that each of the petitioners had given to each of his five children "a one-twentieth (1/20th) interest each in the co-partnership known as the R. Verne McCullough Enterprises." It further provided: "3. That the parties hereto agree that pursuant to said gifts, bequests and devises that each of said children shall become a partner in the said R. Verne McCullough Enterprises upon their acceptance and approval of this agreement; that each of said children shall have a one-tenth (1/10th) interest in said partnership assets and shall each receive a one-tenth (1/10th) interest in the profits of said partnership, and shall be obligated to pay one-tenth (1/10th) each of all losses incurred by said partnership except as otherwise provided by operation of the general law of partnership. "4. It is understood and agreed by the parties hereto that said new partners may receive additional compensation for services rendered to said partnership as provided by the terms of said hereto attached partnership agreement. "5. It is expressly understood and *187 agreed that all terms of the hereto attached partnership agreement are incorporated herein except as specifically modified by this agreement." On January 2, 1941, a second "addendum" to the partnership agreement was executed by the petitioners, their five children, and William M. McCullough, providing that each petitioner had given to each child a 1.63 per cent interest in the partnership of the reasonable market value of $4,000 each; that the capital assets of the partnership had increased by $20,000; and that thereafter the interest of each partner in the assets and in the profits and losses of the partnership should be as follows: Interest
Interest
in
in
Profits
Name of Partner
Assets
& Loss
Percent
Percent
R. Verne McCullough
16.85
11.85
Irene McCullough
16.85
11.85
Pauline McCullough
13.26
13.26
Leland Stanford McCullough
13.26
13.26
Beth McCullough
13.26
13.26
Geraldine McCullough
13.26
13.26
Robert Verne McCullough
13.26
13.26
William M. McCullough
None
10.00
In all other respects the original partnership articles were again ratified and confirmed. Each petitioner filed gift tax returns, reporting as gifts the transfers to *188 the children. No taxes were paid, because of the specific exemption. The names of the petitioners' children and the date of birth of each are as follows: Pauline McCullough (Schwind)
Aug. 29, 1918
Leland Stanford McCullough
Jan. 22, 1920
Beth McCullough
Feb. 5, 1924
Geraldine McCullough
Sept. 28, 1926
Robert Verne McCullough
April 3, 1930
In 1940, McCullough obtained in his individual name a franchise granting him the right to bottle and sell Canada Dry Products in a territory comprising the State of Utah. The premises in which the bottling works were housed were purchased with partnership funds, and title thereto was taken in Mrs. McCullough's name. It was considered a part of the partnership assets and was operated as a partnership enterprise. It was the acquisition of this plant which represented the increase of $20,000 in the partnership assets, mentioned above in the second "addendum" to the partnership agreement. Separate sets of books are maintained for the bowling and billiard businesses, the Canada Dry Bottling Company, and the real estate operations, respectively. Capital accounts were set up for each of the partners on the ledger covering the real estate *189 operations, which is used as a controlling ledger over all the enterprises. The accounts show the several interests of the various partners in all the businesses. Each partner's account is credited with his distributive share of the partnership profits and is charged with his withdrawals. Actual withdrawals during the period in question were made only by the petitioners, with the exception of one withdrawal against the partnership account of Beth McCullough, in 1941, to cover the cost of an electric organ purchased for her in that year. The bowling alley business maintains two bank accounts, one in Salt Lake City, and one in Ogden. The bottling company also maintains its own bank account. The real estate operations are handled through the petitioners' joint account, an account they have maintained since their marriage and which is used by them for personal as well as partnership purposes. None of McCullough's income from his law practice is placed in any of these accounts, but is kept in a separate account maintained in the name of his law firm. The partnership employs an accountant who has complete charge of the books and financial operations of the partnership. Practically all *190 checks are issued and signed by him, except those drawn by the petitioners on their joint account. A complete record is kept by him of all checks drawn on each bank account, showing to whom and for what purpose each check is drawn. At the end of each year, in adjusting the accounts of the partners, the checks drawn by the petitioners for personal and family purposes are segregated by the accountant and are charged to the account of one or the other of the petitioners. The petitioners' withdrawals have always been less than their distributive shares of the partnership profits. Prior to the formation of the partnership, McCullough had devoted little time to his businesses. Each establishment had its own manager, and a general manager was employed who supervised all the enterprises. In 1940 he reorganized the businesses upon what he considered a more efficient and economical basis. During that year he also hired and trained a new general manager, a step necessitated by the death of his former manager. These activities consumed about half his time in 1940 and for his services he was paid a salary of $2,400 by the partnership. He received no salary in 1941. During that year he allotted *191 but a small portion of his time to the partnership activities, devoting his energies chiefly to his law practice. Before and since the creation of the partnership, Mrs. McCullough has collected the rents, assisted in the selection of managers for the various enterprises, and consulted with the older members of the partnership on matters of policy. Pauline McCullough Schwind was employed as accountant for the bowling alley operations during 1940, receiving as compensation a salary of $100 per month, in addition to her distributive share of the profits. None of the other children rendered any services to the partnership during the years in controversy. Leland Stanford McCullough was employed part time during the latter part of 1942 as assistant manager of the bottling company, and was paid a salary for his services. He was attending school at the time and was able to work only in the afternoons and evenings and on Saturdays. During 1942 and 1943; Beth McCullough did some stenographic work for the partnership. Additional real estate has been purchased by the partnership, title to which has been taken in the names of one or more of the adult partners. A part of this realty is held *192 in the name of Pauline McCullough Schwind, and another part is held in the names of Beth McCullough, Leland Stanford McCullough, and Pauline McCullough Schwind. Apartment buildings have been erected on this property, entailing the expenditure of between $100,000 and $110,000 of partnership funds. The necessary funds used in these operations have all come from the petitioners' joint account. When the need arises, withdrawals are made from the other bank accounts, by check, and deposited in the joint account, for use in the expansion of the real estate operations. The petitioners' purpose in making their children members of the partnership was not one of tax avoidance. Their motive was to give the children an opportunity to participate in the financial affairs of the family and to teach them the responsibility of carrying on a business. The petitioners were nearing 50 years of age, and they desired to teach the children the business so that the latter would be able to carry on. On November 10, 1943, Mrs. McCullough petitioned the District Court of Salt Lake County, Utah, a state court, for the appointment of a guardian of the estates of Geraldine McCullough and Robert Verne McCullough, *193 minors. This was done primarily because the children desired to secure insurance on their father's life and the insurance company had insisted on the appointment of a guardian to represent the minors. In her petition, Mrs. McCullough also asked for a confirmation of the partnership contracts. On November 12, 1943, the court appointed Irene McCullough guardian of the estates of Geraldine and Robert Verne McCullough, and approved and confirmed the partnership contracts for and on behalf of the minor children, and authorized the guardian to represent the minors in the partnership. As guardian Mrs. McCullough filed with the court a fiduciary bond in the amount of $15,000, which McCullough signed as one of the sureties. William M. McCullough had been employed by R. Verne McCullough prior to the organization of the partnership as maintenance superintendent of the latter's business properties. He was paid a regular salary, which in 1939 amounted to $3,900. At the time the partnership was formed, it was agreed that he should be a partner, with a 10 per cent interest in the partnership profits and losses, but no interest in its assets. Thereafter, he continued his duties as maintenance superintendent *194 and also assisted in the collection of rents. He received $1,300 in 1940 and approximately $1,200 in 1941, in addition to his distributive share of the profits for each of said years. Partnership returns were filed for the years in controversy. Each of the partners filed individual returns for the same years, reporting as income his or her share of the partnership profits and the salary, if any, received during the year. The distributive income allocated to each, including the additional compensation paid R. Verne McCullough, William M. McCullough, and Pauline McCullough Schwind, and the total partnership income, as disclosed by the partnership returns, was as follows: [SEE TABLE IN ORIGINAL] [a1] Erroneously reported as $18,531.88.
By upward revision, which the petitioners do not contest, the respondent changed the total amounts to $19,819.95 and $34,147.25, respectively. In his deficiency notice the respondent determined that William M. McCullough and the petitioners' children should not be recognized as partners for Federal income tax purposes, and that 50 per cent of the net income was taxable to each of the petitioners. During 1940 and 1941, William M. McCullough was *195 a bona fide member of the partnership known as R. Verne McCullough Enterprises, and the net earnings of the partnership allocated to him were his income. The petitioners made valid, completed gifts to their children of interests in the partnership business. During 1940 and 1941 the children were bona fide members of the partnership, and the share of the net earnings of the partnership allocated to each was the income of the partner to whom allocable. Opinion ARUNDELL, Judge: The respondent concedes the existence of a partnership between the petitioners, R. Verne McCullough and Irene M. McCullough. However, he denies that any bona fide partnership exists among the petitioners, their children, and William M. McCullough. With respect to William M. McCullough, the respondent contends that his interest in the partnership was merely an assignment by the petitioners of 10 per cent of the partnership profits and that such an assignment of income does not relieve the petitioners from liability to pay taxes thereon. He relies solely upon Burnet v. Leininger, 285 U.S. 136, in support of his contention. The Leininger case involved an attempt by the taxpayer *196 to constitute his wife an equal partner with him in his interest in a certain partnership. The wife contributed no services to the partnership; the other partners did not consent to her becoming a member; no change was made on the partnership books showing her to be a member; and the husband's share of the profits continued to be paid solely to him. The court held that such an arrangement did not make the wife a partner; that her interest, if any, was only derivative and that the husband was taxable on his full share of the partnership income. The facts before us are materially different from those in the Leininger case, supra. At the time the partnership was formed, it was agreed by all that in consideration for his past and continued services, William M. McCullough should be a member of the partnership, having a 10 per cent interest in the profits and losses, but no interest in the partnership assets. It was also expressly provided that as a general partner he should be individually liable for all partnership losses, notwithstanding any statement in the partnership agreement to the contrary. In Meehan v. Valentine, 145 U.S. 611, a partnership *197 is defined as follows: The requisites of a partnership are that the parties must have joined together to carry on a trade or advanture for their common benefit, each contributing property or services, and having a community of interest in the profits. Ward v. Thompson, 22 How. 330, 334. In Jasper Sipes, 31 B.T.A. 709, we held that to constitute a partnership there must be: (1) an association or joining together of the parties to carry on a business enterprise, which requires, of course, express or implied consent to the arrangement by all the parties who are to be partners; (2) a contribution by each of property or services; and (3) a community of interest in the profits. These requirements are met in the instant case. The partnership was formed to carry on the petitioners' activities, they furnishing capital and services, and William McCullough furnishing only services, each having an interest in the profits. Furthermore, it was expressly provided that as a general partner, William M. McCullough should be individually responsible for all partnership losses. The sharing of profits and losses is the principal criterion *198 of a partnership agreement. Whitney v. Harris, 169 Okl. 288, 36 P. (2d) 872. We conclude, therefore, that William M. McCullough was a bona fide partner during the years involved. It should be noted, too, that the share of the partnership profits allocated to him in 1940 and 1941 was not disproportionate to the value of his services, measured by the amount of the salary paid him in 1939. With respect to the petitioners' children, the respondent contends that the gifts to them were merely part of a tax saving device, an attempt to distribute business income among the members of the petitioners' family; that no bona fide gifts to the children were made; and that the latter never became members of the partnership. There is a line of authority which holds that a parent engaged in a business involving a substantial capital investment may constitute his minor children partners with him in that business by making them bona fide gifts of an interest therein, either directly or by means of trusts, the children contributing the interests which have been given them as their contributions to the capital of the business. Among these cases are Commissioner v. Olds, 60 Fed. (2d) 252; *199 Rose v. Commissioner, 65 Fed. (2d) 616; Albert G. Dickinson, 23 B.T.A. 1212; N. H. Hazlewood, 29 B.T.A. 595; R. E. Hinshaw, 16 B.T.A. 1236; Richard H. Oakley, 24 B.T.A. 1082; Justin Potter, 47 B.T.A. 607; and Robert P. Scherer, 3 T.C. 776. It is the property which is the subject of the gift that produces the income taxable to the child. R. E. Wing, 17 B.T.A. 1028; Alfred T. Wagner, 17 B.T.A. 1030; Arthur Stryker, 17 B.T.A. 1033. That the businesses here involved depended for their success primarily upon the invested capital, rather than the petitioners' personal services, can admit of no doubt. The capital assets consisted of improved real estate and of business establishments involving large amounts of equipment. The businesses themselves were operated by managers and the financial affairs of all the partnership activities were handled by an accountant. The petitioner *200 McCullough devoted about half his time in 1940 to reorganizing the enterprises, but he was compensated for these services by the salary of $2,400 paid him in that year. In 1941 and subsequent years, he spent only a small portion of his time with the partnership businesses, testifying that he did not visit the various establishments more than once a month, and that it was his purpose to organize the businesses so that they could operate without his assistance. Mrs. McCullough's chief activities in connection with the partnership consisted only of collecting rents and assisting her husband in the selection of managers. Consequently, the following cases, relied upon by the respondent, involving as they did businesses which were primarily of a personal service nature are distinguishable: Earp v. Jones, 131 Fed. (2d) 292; Harry C. Fisher, 29 B.T.A. 1041, affd. 74 Fed. (2d) 1014; Mead v. Commissioner, 131 Fed. (2d) 323; Schroder v. Commissioner, 134 Fed. (2d) 346; Tinkoff v. Commissioner, 120 Fed. (2d) 564; *201 and Francis Doll, 2 T.C. 276. The question before us is thus narrowed to a determination of whether or not the petitioners made valid gifts to their children of interests in the partnership business. If they did, the children made contributions to the business and hence had an interest in the partnership. Walter W. Moyer, 35 B.T.A. 1155. Upon the evidence presented, we hold, and we have found as a fact, that the petitioners made valid, irrevocable gifts to each of their five children, and that the children were thereafter bona fide members of the partnership. By the "addenda" to the original articles of partnership, the petitioners transferred to their children interests in the partnership therein stated, and divested themselves of all ownership of these interests in the R. Verne McCullough Enterprises. The partnership business was then continued under the original partnership agreement, as modified by the two supplemental documents. There can be no question of consent, since all the partners executed the documents. Cf. Burnet v. Leinnger, supra. Thereafter, accounts were set up showing the interest of each in *202 the partnership profits. The petitioners' older children became active in the partnership affairs. Pauline McCullough Schwind was employed as bookkeeper for the bowling alley operations during 1940, and Leland Stanford McCullough acted as assistant manager of the bottling company during 1942. Additional real estate was purchased by the partnership, title to which was taken in the names of the petitioners' older children. Over $100,000 of partnership funds was expended in the development of these properties. While some of these events occurred after the years in controversy, they are significant as evidence of the bona fide intent of the petitioners to make their children partners, and are consistent with the petitioners' statements that they desired to give the children an opportunity to participate in the financial affairs of the family and to teach them the responsibility of carrying on a business. In 1943, upon petition by Mrs. McCullough, the District Court of Utah County entered an order approving the partnership contracts and appointing Mrs. McCullough guardian of the estates of the minor children and authorizing her to represent the minors in the partnership. We have held *203 that the validity of a partnership under state law is not conclusive upon us in our determination of whether or not it should be recognized for Federal income tax purposes. In Francis Doll, supra, the petitioner's wife instituted an action against her husband in a state court for a declaration of her rights in the partnership. The husband admitted all the material allegations, and the court entered a decree declaring the husband and wife equal partners in the business involved. We refused to give effect to this decree, on the ground that the action was "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." However, we think the situation here is more nearly analogous to that presented in Justin Potter, supra.There, as here, the petitioners made gifts to their minor children of interests in a partnership and admitted them as partners. Later it was decided to incorporate the business of the partnership. A bill was filed in the Chancery Court asking for a determination of the interests of the minors *204 in the partnership and a determination of whether it was to the best interests of the minors that the proposed transfer of partnership assets to the corporation should be made. The court found that the children were members of the partnership under the gifts from their parents. What we said with respect to this decree is apposite to the facts before us: Whether or not the decree of the Chancery Court is dispositive of the matter of whether valid gifts of the partnership interests were made in 1934 to the children, so that the same force is to be given here to the holding of a state court, as was done in the Blair case [ Blair v. Commissioner, 300 U.S. 5 [37-1 USTC [*] 9083]], we need not decide, in view of all the other evidence which supports a holding for the petitioners on the point. However, we give much weight to that decree as evidence of the donative intent of petitioners and their conduct with respect to the subject matter of the gifts after making the gifts. So, too, we view the appointment of a guardian on behalf of the minor partners as strong evidence of the donative intent of the petitioners. Though legal title to *205 the real estate was held in the names of one or more of the individual partners, this fact is not important in view of the other circumstances present. Whether real estate held in the names of individual partners is partnership realty is a question to be determined by the intent of the parties, as shown by their conduct towards it. Martin v. Carlisle, 46 Okl. 268, 148 P. 833; Picetti v. Orcio, 57 Nev. 52, 58 P. (2d) 1046. There can be no doubt that the petitioners intended the real estate to be partnership property. The partnership agreement provides that "The capital assets of said partnership shall consist of the following described real property, and all improvements and appurtenances thereto belonging, * * *" and states further that "It is expressly understood that all of said capital assets are hereby transferred to said partnership by the said R. Verne McCullough and Irene McCullough * * *." The premises upon which the bottling company was located were purchased with partnership funds, legal title thereto being taken in the name of Mrs. McCullough. It was treated by all as a part of *206 the partnership assets, and the profits arising from the operation of the business were credited to the accounts of the individual partners. Section 69-1-5 of the Revised Statutes of Utah (Section 8(2) of the Uniform Partnership Act) provides that unless the contrary intention appears, property acquired with partnership funds is partnership property. Here the evidence shows clearly that the real estate was intended to be and was a part of the partnership property. This being so, the children received an interest in it as partnership property. It does not appear that drawing accounts were provided for the members of the partnership other than the petitioners. However, regular withdrawals by all the partners are not essential to the validity of a partnership. Commissioner v. Olds, supra.Furthermore, the children had no present need for the money since the expenses of their support and maintenance were paid by their parents. The business was expanding, and it was to their advantage to have their shares remain in the partnership, to be used in its development. Nor do we think it necessary, as suggested by respondent, that the children's interests in the *207 profits should have been segregated and put in separate accounts. Complete records were kept of all receipts and disbursements and the share of the profits belonging to each child was credited to his or her capital account on the books of the partnership. None of the children's money was used by the petitioners for their own personal needs or for the necessary support of the children. While it would have been more prudent for the petitioners to have kept their personal bank account entirely separate from that of the partnership, we find nothing in the situation as it existed which is inconsistent with the view that the partnership interests and the income resulting therefrom belonged to the children. Cf. Justin Potter, supra. There is no evidence of any reservations or secret agreements of any kind that would impeach the bona fides of the transaction. The assignments by the petitioners, the adjustment of the partnership books and the subsequent conduct of the parties all show unequivocally the intention and purpose of the petitioners to make irrevocable gifts to their children and to constitute them their partners. We do not think that our conclusion *208 conflicts with that reached in Francis E. Tower, 3 T.C. 396; O. William Lowry, 3 T.C. 730; and Frank J. Lorenz, 3 T.C. 746, since in those cases we found as a fact that no completed gifts were made by the husbands of the capital contributions which the wives purported to contribute to the partnership business. See Robert P. Scherer, supra, and M. W. Smith, Jr., 3 T.C. 894. Decisions will be entered under Rule 50.