EDWARD A. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12005. Promulgated August 11, 1948.

*Horace S. Robeson, Esq.*, and *Edward W. Schietinger, C. P. A.*, for the petitioner.

*George C. Lea, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The respondent contends petitioner's wife, Sara, his daughter, Alberta, and his son, Leslie, were not, for Federal tax purposes, partners of E. A. Myers & Sons during 1943, and that the distributable share of the partnership income attributed to them is taxable to petitioner. The *Tower* and *Lusthaus* cases[1] determined that a member of a family may become a partner for tax and other purposes if he either invests capital originating with him, or substantially contributes to the control and management of the business, or otherwise performs vital additional services.

So far as Alberta and Sara are concerned, it is admitted by petitioner that during the taxable year in question they neither performed services nor shared in the control and management of the business. It is urged, however, that they both invested capital originating with themselves. We do not agree with this contention.

The facts disclose that prior to 1930 Sara loaned petitioner certain sums she had previously received from him, from her father as a wedding gift, and from the estates of her mother and an aunt, and that he repaid his debt to her in full when they shared the expense of purchasing their home in 1930. There is not in this record convincing evidence of any additional loans Sara made to petitioner.

It is claimed by petitioner, however, that he owed Sara $17,000 in 1943. He made out a check to her for this amount drawn on partnership funds on November 1, 1943, and she in turn, gave $16,000 of this amount to the partnership on November 8, 1943.

Sara could not explain the origin of this alleged debt. Upon cross-examination she was asked:

Q. Can you tell us, Mrs. Myers, the principal amount—can you state precisely just how your husband owed you this $17,000 you claim he owed you?

After several attempts to describe the source of the debt, she was asked:

Q. Now, what was the next principal amount you got? We are trying to account for the $16,000 or $17,000.
A. Do you know, I just can't tell you exactly. I would rather not say—I do not want to say about this; my husband [petitioner] knows all about that.

However, petitioner's attempted explanation of the debt which he claimed he owed to Sara was not convincing. We think it apparent that the money which it is claimed was invested by Sara in the partner-

---

[1] *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293.

172

ship originated with petitioner. In the absence of more compelling proof to the contrary, we conclude that "no capital not available" for use in the business before was brought into the business as a result of Sara's becoming a partner and, since she performed no service whatever to the partnership, we hold that she was not a partner of E. A. Myers & Sons for tax purposes during 1943. See *Commissioner* v. *Tower, supra.*

Alberta's capital investment, petitioner contends, grew out of his "gifts" to her of $5,000 in 1937 and $4,000 in 1941. Both of these sums were given to her for the express purpose of investment by her husband in his partnership account. Both were transferred from petitioner's investment account and placed in a "special investment account" in her husband's name. He received all the earnings from that account and, in turn, accounted therefor to Alberta.

Petitioner, by virtue of the terms of the articles of copartnership executed on December 28, 1935, which remained in effect through 1943, retained dominion over the above described amounts. As the partner representing the majority of the percentage of investment in the partnership from 1935 through 1942, he, among other things, determined what disposition should be made of accrued book profits; had control over all withdrawals from the partnership funds; and determined with finality all policies of the partnership in the event of disagreement among the partners. Hence, petitioner did not absolutely and irrevocably divest himself of the title, dominion, and control of that money. See *Francis E. Tower*, 3 T. C. 396, 402; affirmed by the Supreme Court *sub nom. Commissioner* v. *Tower, supra,* and cases therein cited. It is therefore apparent that Alberta did not contribute any capital originating with her and that she was not a partner for tax purposes during 1943.

Petitioner urges, however, that, even if it be determined that Alberta was not a partner, petitioner should not be taxed for her distributable share of the partnership income. We believe his contention is well taken.

The moneys which petitioner gave to Alberta in 1937 and 1941 were intended to be and were used to increase the investment interest of Samuel F. Lybarger in the partnership. His status as a partner since 1935 is clearly established. We are not concerned here with the arrangement whereby he held for the benefit of Alberta a part of his share of distributable profits of the partnership, except to point out that what Alberta received in this respect is traceable to her husband's partnership investment rather than to petitioner's partnership investment. Also, whether or not Alberta became a partner by investment in the partnership of the moneys received from her husband, petitioner is not taxable with the share of partnership profits received by her in 1943.

It will be noted from the table set forth in our findings that petitioner's percentage of interest in the partnership was reduced in 1943 in approximately the total percentage of interest represented for only Leslie and Sara. On the other hand, Alberta's husband's percentage of interest was reduced in 1943 in roughly the same amount as that represented as her interest. It is thus at once apparent that no avoidance of taxes was effected by petitioner so far as Alberta's purported partnership status is concerned. We therefore hold, although Alberta was not a partner during 1943, that petitioner should not be taxed for her distributable share of the partnership income. See *Durwood* v. *Commissioner*, 159 Fed. (2d) 400.

With respect to petitioner's son Leslie, the evidence is convincing that he contributed vital services to the partnership during 1943. He established in that year a rationing system for determining how many hearing aid batteries should be sent to various distributors located throughout the United States; he worked out the details with respect to setting up additional distributors; and he purchased supplies for the partnership which required working out material problems with suppliers and priority questions with Government officials. We believe those duties constituted a vital factor in the production of the partnership income and rendered Leslie's status that of a partner for all purposes.

Although the amended articles of copartnership were not executed until November 1, 1943, petitioner contends that Leslie was a partner from January 1, 1943. He supports his argument by pointing to the amendment which states that Leslie should have the right to full and complete participation in the profits for 1943 the same as if the amendment to the articles had been executed as of January 1, 1943.

In his income tax return for 1943 Leslie stated that he "became a partner 10/1/43." During cross-examination at the hearing he admitted that he was in error and that he did not become a partner until November 1, 1943. We believe Leslie's admission that he was not a partner until the latter date overcomes the declaration contained in the amended articles that he was such from the first of the year. We hold that beginning November 1, 1943, Leslie was a partner of E. A. Myers & Sons and that his interest in the partnership for the months of November and December 1943 was 4.197 per cent.

Paragraph 3 of the partnership agreement of September 28, 1935, provides for the allocation of the partnership's distributable profits and prescribes the formula for determining the respective distributable shares of the partners therein on the basis of a calendar year period.

The amendment to the partnership agreement whereby Leslie became a partner continues in effect the provisions of the partnership agreement of September 28, 1935. In paragraph 3 of such last mentioned agreement, which is set forth above in our findings of fact, it

appears that each partner's distributable share of the partnership profits is determined in direct proportion to the ratio between his capital investment and the total capital investment of the partnership. Such paragraph provides for averaging over a full calendar year period the amount of a partner's partnership invested capital under a formula prescribed therein. By annualizing for the entire year 1943 Leslie's partnership investment account in the last two months of that year and using the averaging formula above mentioned, we find that the average percentage ratio of Leslie's investment account for the entire year 1943 was .6995 per cent. We hold, therefore, that Leslie's share of the distributable profits of the partnership for the year 1943 was .6995 per cent of the total distributable profits for that year. Accordingly, the amount of such percentage so allocated to Leslie should not be included in petitioner's gross income for tax purposes. Otherwise, on this point, the determination of the respondent is approved.

Petitioner contends that respondent erred in disallowing the deduction of an amount of $8,640 which was characterized as interest payments to Sara. We have found that prior to 1923 Sara loaned petitioner about $7,000 and that about the year 1930 petitioner and Sara built a home at a cost of $18,000. She agreed to share equally with petitioner in the expense of building such home and agreed that the money used for her share thereof was considered to be repayment for the sum she had previously loaned to petitioner. Thus we have found that whatever debt petitioner owed to Sara prior to 1930 was paid by the arrangement above indicated. We also have found that Sara did not loan any money to petitioner subsequent to that time. Such findings of fact were fully warranted by the evidence, and, in accordance therewith, we hold that there existed no debt owed by petitioner to Sara upon which there was an accrual of interest of any amount in 1943. It follows that respondent did not err in disallowing this deduction.

*Decision will be entered under Rule 50.*