O. William Lowry, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Charles R. Sligh, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 112691, 112692.   Promulgated May 8, 1944.

*Morton Keeney, Esq.,* and *Frank E. Seidman, C. P. A.,* for the petitioners.

*Philip M. Clark, Esq.,* and *Melvin S. Huffaker, Esq.,* for the respondent.

732

738

HARRON, *Judge*: Prior to the time when petitioners gave consideration to the matter of dissolving the corporation known as the Charles R. Sligh Co., petitioners owned all of the stock of the corporation. They discussed the tax advantages to be derived from conducting the business as a partnership in comparison with the conduct of the business as a corporation, from January 1937 until the fall of 1938. Upon advice of their tax adviser, petitioners delayed making the conversion from the corporate form to the partnership form until 1938, but the matter was discussed and considered during 1937 and 1938, and prior to the making of transfers to the respective wives. A limited partnership was created at the end of 1938, with the arrangement that the wives of petitioners were to be limited partners, but were not to contribute any services. The business which had been conducted through a corporation under the direction of petitioners was continued in exactly the same way under the partnership under the direction of petitioners. The petitioners' motives in making the formal change were primarily to reduce the amount of tax, and that is admitted.

The question is whether or not petitioners are liable for tax upon the entire income of the business in 1939 and 1940, respectively. Peti-

tioners contend that the partnership must be recognized for purposes of Federal taxation and that, consequently, the income of the business is taxable to the four partners, respectively. Respondent contends that the partnership arrangement should not be recognized for tax purposes because it effected no substantial change in the economic status of the petitioners under the revenue laws. Respondent asserts that the arrangements were without substance, were only a device to reduce taxes, and were without any real business purpose. Respondent contends that this proceeding comes within the rule of *Schroder* v. *Commissioner*, 134 Fed. (2d) 346; *Mead* v. *Commissioner*, 131 Fed. (2d) 323; certiorari denied, 318 U. S. 777; and *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764. Respondent contends further, that the income of the business is taxable to petitioners under the rule of *Helvering* v. *Clifford*, 309 U. S. 331, and he relies also upon *Warren* v. *Commissioner*, 133 Fed. (2d) 312, affirming 45 B. T. A. 379; *Harry C. Fisher*, 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014; *Higgins* v. *Smith*, 308 U. S. 473; and *Francis Doll*, 2 T. C. 276.

We have said that it is essential that a contribution be made by each member of a partnership of either property or services, in order that a partnership may be found to exist. *Thomas M. McIntyre*, 37 B. T. A. 812. See also *Meehan* v. *Valentine*, 145 U. S. 611. In this case the wives of petitioners did not contribute any services to the business. The question to be considered is whether they contributed any capital or property to the business.

It is clear that petitioners made the alleged gifts of stock in the corporation to their wives pursuant to a plan involving the dissolution of the corporation and the transfer of assets to a partnership. The evidence shows that the purpose of the transfer of stock to each wife was to put over to her a share in the assets of the corporation which she was, in turn, to contribute to the partnership. Of course, there was no actual distribution of the assets of the corporation to the stockholders upon the dissolution of the corporation. All steps to effect the change were taken on paper. Petitioners were the owners of all of the stock and, therefore, of all the assets of the corporation, in the beginning. If they made bona fide gifts of interests in part of the assets to their wives, through the medium of transfers of stock, their wives must have received complete dominion and control over property, and petitioners must have divested themselves of such control. Such rule is well established. See *Edson* v. *Lucas*, 40 Fed. (2d) 398, and authorities cited therein on the essential elements of a bona fide gift. If the wives received such dominion over property, it will follow that they, individually, made real contributions to the capital of the partnership.

The question whether petitioners made bona fide gifts of interests in property to their wives, divesting themselves of full dominion and

control, must be determined by examining the terms of the certificate of partnership and the partnership agreement. The provisions of both agreements lead us to conclude that the wives of petitioners did not receive from them a complete economic interest in the portions of the property which purportedly went to them out of the corporation, and from the wives into the partnership. The limited partners, the wives, have no right to receive any property upon dissolution of the partnership, which is to exist for five years only, other than cash, and they have no right to withdraw their "contributions to the firm capital." Although the value of the "interest" contributed by each wife was said to be $22,500, in the certificate of partnership, the general partners, petitioners, "shall have full power and authority to establish values upon such books for the assets so contributed to the firm by all the partners. Such values shall not be conclusive as to the value of the interest of any partner upon dissolution of the firm for any cause." From these provisions it is apparent that, whereas the wives are purported to have contributed to the partnership property having a value of $22,500, it is wholly problematical what they will be allowed by the general partners upon dissolution of the firm for said contribution to the capital. The wives can not receive property, but only cash, and they are left without any voice in determining, in the end, the cash value of the property they are alleged to have contributed. Petitioners retained the right to determine the book values of the contributions, but whatever values they fix are not conclusive and binding.

There is considerable ambiguity in the matter of what property the limited partners contributed. At first it appears that each partner contributed one-fourth of all of the assets of every kind, tangible and intangible, formerly owned by the corporation. The certificate of partnership so provides. On the other hand, the partnership agreement provides that the name "Charles R. Sligh Company" is the property of Charles R. Sligh, Jr., and "its use is a valuable privilege." Also, any trade-mark, trade name, insignia or device containing the above name is the property of Sligh. Upon dissolution of the partnership, Sligh is to receive, without any obligation to make payment therefor, the trade name, etc., and no one except Sligh shall have any right to engage in business under the name of Charles R. Sligh Co., notwithstanding any good will value acquired during past conduct of the business. The above provisions clearly constitute the retention by one of petitioners of exceedingly valuable property rights in the business of Charles R. Sligh Co. The business had been founded under the name of Sligh Furniture Co. by Sligh's father; Sligh used his own name when Lowry and Sligh organized the new business in 1933. Obviously, the trade name had value in itself as the name of

the business and in the use thereof in trade-marks, yet Sligh's wife certainly did not acquire any interest in this valuable part of the assets of the business, and neither did Lowry's wife.

The general business of the partnership was stated to be the manufacture of furniture, but it was provided in the partnership agreement that the general partners could engage in any other business within the general scope of furniture manufacture, without the consent of the limited partners. Within such broad powers, the general partners had complete control over the assets of the business, so that they could use the portions allegedly contributed by their wives, without their consent, and venture into unprofitable fields, if it so turned out, free from any liability to the limited partners. Nevertheless, losses are to be borne equally by all of the partners. It is difficult to conceive of a more complete retention of control of business assets than this provision envisages, and it must be kept in mind that petitioners, the alleged donors of interests in the assets to their wives, have in reality retained exceedingly broad control over the use of the property. It would be unreal to view the arrangement as falling into two steps, entirely separate, under which the wives first received full dominion and then, by their own volition, gave all of the control back to petitioners. As far as the record shows, the wives had no voice whatsoever in the drafting of the partnership agreement or the certificate of partnership.

Finally, as a further item in the powers retained by petitioners, they had the sole voice in the matter of distributing the profits of the business. No profit can be distributed until the general partners affirmatively so decide. The right to receive income from property is one of the most important incidents of ownership. Here, the alleged donees of one-fourth interests in the property of the business do not have an unfettered right to receive income from their alleged interests or property, for they have no voice in deciding what of the profits shall remain in the business and what shall be distributed. Upon dissolution of the firm, the general partners may purchase the interests of the limited partners according to values to be determined by appraisers.

The conduct of the parties in the taxable years in the matter of distributions of partnership profits is important. No distributions of profits were made, except for amounts to pay the income taxes of the wives and a small amount to purchase a car for Lowry's wife.

The question here is whether what was done, apart from the tax motive, was in reality what petitioners contend was done. Cf. *Gregory* v. *Helvering*, 293 U. S. 465. Did petitioners divest themselves of ownership in one-quarter, each, of the assets of the corporate business, putting complete ownership of property, or of undivided interests in property, in their respective wives, so that they, in turn, were in a

position to contribute capital to the partnership? Upon the facts, we believe this question can be answered only in the negative. Without question, the alleged gifts were made with full understanding that a plan devised by petitioners would be carried out. The wives could use the interests they received, which are difficult to describe with any certainty, in view of an abundance of restrictions and ambiguities, only as petitioners dictated and prescribed. See *George H. Whiteley, Jr.*, 42 B. T. A. 402; affd., 120 Fed. (2d) 782; certiorari denied, 314 U. S. 657; *Empire Trust Co., Executor*, 41 B. T. A. 839; affd., 119 Fed. (2d) 421; *F. Coit Johnson*, 33 B. T. A. 1003; affd., 86 Fed. (2d) 710. Petitioners, it is concluded, did not relinquish their dominion and control over the interests in property which they purportedly gave to their wives by way of transfers of stock in the corporation, and, therefore, they did not make bona fide gifts to the wives. *Francis E. Tower*, 3 T. C. 396. It follows that the wives did not make contributions to the capital of the partnership, and they were not carrying on a business with petitioners in a partnership within the provisions of section 181 of the Internal Revenue Code.

Respondent's determinations are sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

BLACK, *J.*, dissenting: The general facts in these proceedings do not appear to be in dispute. At the conclusion of the general findings of fact the majority of the Court has made the following ultimate findings of fact:

Petitioners did not relinquish domination and control over any part of the assets of the corporation by reason of the gifts of stock in the corporation to their wives, and, consequently, the wives did not contribute any property to the capital of the partnership.

I do not agree to the correctness of the above ultimate findings of fact. I think it is contrary to the findings of fact which have preceded it. Based on the general findings of fact which the majority has made, I would find ultimate facts as follows:

Petitioners Lowry and Sligh made irrevocable gifts to their wives of 450 shares each of Charles R. Sligh corporation stock. When this corporation was liquidated and dissolved in December 1938, the wives became the owners of their proportional part of the assets of the corporation. The partnership agreement entered into December 16, 1938, between petitioners and their wives created a legal, valid partnership between them with ownership of partnership profits as fixed in the partnership agreement. The earnings of the partnership thereafter allocable to the respective partners under the terms of the partnership agreements were the income of the respective partners to whom allocable.

Inasmuch as I do not agree to the ultimate findings of fact made by the majority to which I have called attention above, it of course follows that I do not agree to the conclusions reached in the majority opinion, which are typified by the concluding part of the opinion, reading as follows:

\* \* \* Petitioners, it is concluded, did not relinquish their dominion and control over the interests in property which they purportedly gave to their wives by way of transfers of stock in the corporation, and, therefore, they did not make bona fide gifts to the wives. *Francis E. Tower,* 3 T. C. 396. It follows that the wives did not make contributions to the capital of the partnership, and they were not carrying on a business with petitioners in a partnership within the provisions of section 181 of the Internal Revenue Code.

There is a well settled line of cases holding that a husband engaged in a mercantile or manufacturing business can make his wife a partner in the business by making a bona fide gift to his wife of an interest in the business and then entering into a partnership agreement with the wife, she giving as her contribution to the capital of the partnership the interest given to her by her husband. Some of these cases are *Richard H. Oakley,* 24 B. T. A. 1082; *Kell* v. *Commissioner,* 88 Fed. (2d) 453; *Rose* v. *Commissioner,* 65 Fed. (2d) 616; *Jasper Sipes,* 31 B. T. A. 709; *Walter W. Moyer,* 35 B. T. A. 1155. In the *Moyer* case we said:

\* \* \* The question to be determined, therefore, is whether the petitioner actually made a gift to his wife of an interest in the business in the amount of $100,000. If he did make a gift to his wife, she made a contribution to the business and hence had an interest in the partnership. \* \* \*

As I have already stated, I think the evidence shows that in the instant case the petitioners did make bona fide gifts to their wives and a legal, valid partnership was formed. Therefore I think the line of cases which I have cited above controls. Clearly the instant proceedings are distinguishable from that line of cases which holds that a husband whose earnings are from personal services such as fees from medical practice, attorney fees, accounting fees, insurance commissions, or engineering fees may not make his wife a partner and have his personal service earnings taxed as partnership income. Among such cases are *Mead* v. *Commissioner,* 131 Fed. (2d) 323: *Schroder* v. *Commissioner,* 134 Fed. (2d) 346: *Earp* v. *Jones,* 131 Fed. (2d) 292; *Tinkoff* v. *Commissioner,* 120 Fed. (2d) 564, affirming Board of Tax Appeals memorandum opinion; *Thomas M. McIntyre,* 37 B. T. A. 812; *Harry C. Fisher,* 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014.

The earnings of the Charles R. Sligh Co., a limited partnership, during the taxable years here involved were not personal service earnings. That fact appears too clear for argument. Therefore, in the instant proceedings I think the decision should be for the petitioners and

I dissent from the view that the entire partnership earnings are taxable to petitioners, as the majority opinion holds.

ARUNDELL, LEECH, MELLOTT, and DISNEY, *JJ.*, agree with this dissent.

_____

DISNEY, *J.*, dissenting: I agree with what Judge Black has said in his dissent; but it seems to me that the majority view fails to give weight to certain basic law on the subject of gifts. It would appear that the most that could be said of the situation presented in the facts would be that there were gifts, subject to the condition that the wives should enter into the partnership. The law on this subject appears to be condensed and well stated in Corpus Juris Secundum on gifts. In section 36 we read:

The mere fact that a gift is accompanied by a condition or qualification, not inconsistent with the vesting of title in the donee, does not necessarily render it invalid. * * *

The same section also says: "A gift inter vivos must be absolute and, with respect to the immediate vesting of title in the donee, unconditional. * * *"

Section 37 says: "* * * In other words, a condition subsequent accompanying a gift not affecting the donee's title to the property is valid * * *."

From the facts in this case I can not escape the conclusion that nothing relative to the partnership was inconsistent with the vesting of title in the donees and therefore that, under the above authority, gifts were complete. There is nothing, therefore, to negative the idea of donative intent. No power of revocation was retained. Ownership vested permanently in the grantees. There was no mere fleeting pretense of conveyance with the corporation or other entity put to death after three days, as in *Gregory* v. *Helvering*, 293 U. S. 465. There was no temporary reallocation of family income as in *Helvering* v. *Clifford*, 309 U. S. 331. Moreover, even if I considered that case a touchstone by which we may test all or practically all matters of family fiscal arrangements—which I do not—I would be forced to pay close attention to the reference which the Court makes: "* * * where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership * * *."

Such thought is impelling that before taxing one person upon the income flowing from property owned, under standards and concepts laid down by the ordinary rules of law, to another, we should be able to find not merely some contractual relation retained by a donor, but the retention of something which at least approximates a power which "blends so imperceptibly with the normal concepts of full own-

ership" that taxation should follow. We are not dealing here with mere attenuated subtleties in ʹlegal concepts, but with plain, long established, and clearly defined legal principles and definitions contributing to the law of gifts. If in this tax question we do not have such guides, by what are we to be guided? Certainly we are not to regard merely the intent or lack of intent to escape taxation, unless we are not to follow *United States* v. *Isham*, 84 U. S. 496; *Gregory* v. *Helvering*, *supra;* and many others forbidding us to pay attention to that idea only. Yet, that seems to be the real basis of the criteria applied in the majority opinion; for if under the above authority the gift is valid and complete, if title is vested and intended to be vested in the donee, regardless of any other conditions not inconsistent with such title vesting, I am unable to perceive a basis of questioning the transfer, unless it be that of examining the tax intent. Again quoting Corpus Juris Secundum as a convenient summary of the law, in 38 C. J. S. 801, on gifts, we notice:

* * * A gift is not defeated simply because the donor is given the right of access to the property, or because the donor is given custody and control over the property as the donee's agent.

On page 807, we find:

* * * The donee may also lend the subject of the gift to the donor, or deliver it to him as his agent or bailee, without affecting the validity of the gift.

Page 806 says: "* * * Thus, a gift is not rendered ineffectual by donor's retention of possession where he holds as the donee's agent or bailee."

I see nothing in the instant case beyond the reasonable application of the above principles. In addition, it is to be noted that the gift of stock to Sara H. Lowry was made by her husband in May 1937, while the partnership was not formed until December 1938. She had signed her husband's note for $15,000 in connection with his purchase of stock, and had been, from about January 1937, director of the corporation. At the time of the gift of stock to her there was some discussion of doing business in a form other than the corporate form. Although we have often considered as one transaction various transactions sufficiently closely connected to justify that conclusion, I believe we have never considered as an integer transactions so far removed in time as are the gift of the stock to Sara H. Lowry and the formation of the partnership here, with so little connection as the fact that there was merely some discussion at that time of changing the form of business. Nothing definite, nothing contractual in such discussion justifies, in my opinion, the tie-up with the formation of the partnership more than one and one-half years later; and at least in the case of Sara H. Lowry, the unconditional donee of stock, we should not say that there is such connection between gift in May

1937 and the partnership of December 1938 as to justify striking down the reality of the partnership. This attention to the particular situation of Sara H. Lowry by no means indicates that in my opinion a different conclusion should be arrived at as to Charlotte K. Sligh. I therefore respectfully dissent.

ARUNDELL, VAN FOSSAN, BLACK, and LEECH, *JJ.*, agree with this dissent.