OPINION. Disney, Judge-. Does this case belong among those -where family partnerships have been denied reality for tax purposes, or among those which have been considered real and effective in that respect? After extended consideration of the facts here involved, and study of the various cases cited to us, we are of the opinion that the petitioner may not properly be taxed upon the entire income of the business involved. The essential inquiry in such matters is whether there has, in reality, been an assignment of income without real transfer of that which produced it. We do not think that a conclusion of such mere assignment of income can in reason here be reached. Prior to November 16, 1940, petitioner and another, one Cromer, owned the stock of a corporation. On that date, because of dissension and litigation between the two men, the corporation purchased the stock of Cromer for about $41,000, borrowing on November 19, 1940, $30,000 with the assistance of petitioner’s wife, who by joining in assignments permitted the hypothecation, to secure a part of the loan, of insurance policies on petitioner’s life, as to some of which she was beneficiary. Of about $94,500 face value of policies hypothecated, she was beneficiary as to $51,000. On November 16, 1940, the petitioner gave her 10 shares, out of 250 issued by the corporation, and she became a director and secretary. She received the stock certificate and used the shares, voting them at stockholders’ meetings. On the same date the bylaws were amended, in substance, to give petitioner, who was president and treasurer of the corporation, the active management of the corporation, with power to make all contracts in its name and control its financial affairs. The name of the corporation was changed on March 13,1941. About May 1941 it was decided that a partnership would be more economical, since it would save taxes. It was also felt that a partnership would give advantage in borrowing money for conduct of the business. The petitioner thereafter determined to give his wife 115 additional shares of the stock, and did so on June 11, 1941, the stock certificate being delivered to the wife. No conditions were attached to the gifts of stock to petitioner’s wife. They were irrevocable gifts, and she had the right to do as she pleased with them. The petitioner never thereafter exercised any control over the shares or influence over her as to the voting of them. On June 12, 1941, the stockholders voted to liquidate and dissolve the corporation, and to transfer the corporate property to the stockholders, they to assume the liabilities. On June 30,1941, such dissolution took place and a hill of sale of all assets was executed to the stockholders in cancellation and redemption of all stock, petitioner and his wife agreeing to assume all corporate liabilities. Also on June 30, a partnership agreement was entered between petitioner and his wife, providing for equality of interest, equal division of profits and losses, also for signing of partnership checks by either (with counter-signature of an employee to be designated); also for annual inventory and accounting of the business. The business has since been so conducted. The petitioner’s wife has contributed no services to the business. She has at all times had her own bank account and independent property, including securities and a house worth at least $30,000. It is apparent, we think, from the above that though the gift of stock, as to the 115 shares, was after the decision to form a partnership, the gift was real, and the partnership did not leave in the petitioner dominion over the subject matter of the gift. Among the cases extant on this subject, the two in which we held the partnership to be unreal and which most nearly parallel the instant case on the facts, are Francis E. Tower, 3 T. C. 396, and O. William Lowry, 3 T. C. 730. In the Tower case, as here, corporate stock was transferred to the petitioner’s wife, but the transfer was conditioned upon her placing the corporate assets represented thereby in a partnership. The corporate assets were never transferred in liquidation to the stockholders, but were transferred to the partnership. The limited partnership formed between the husband and wife was formed prior to the dissolution of the corporation, though upon the date of liquidation. The wife was not liable for losses, except to the extent of her capital contribution, and net profits were distributable in such manner as the general partners might determine. Nevertheless the Circuit Court of Appeals for the Sixth Circuit reversed, Tower v. Commissioner, 148 Fed. (2d) 388, saying that the condition attached to the gift of shares to the wife, that she would contribute the subject matter to the partnership, had been performed, and upheld the partnership. In the Lowry case, corporate stock was given to the wives, but it was subject to a prior agreement between partnership and members that it must first be offered to stockholders. Mrs. Lowry gave the certificate back to her husband after receiving it. The partnership set-up was limited as to the wives, the husbands, the general partners, having control over the business and power to enter other business without consent of the wives, to receive such salaries as agreed upon by the husbands, and profits were to be distributed only when the husbands should decide to do so. The facts in the above cases which were held to negative reality of partnership serve to affirm such reality here, for. here the wife, with estate and financial ability of her own, is subjected to full responsibility for the partnership’s losses, and had, and exercised, her right, without hindrance from her husband, to her half of the profits. Nothing whatever in the articles of partnership gives the husband any exclusive control over the business. Instead of a dominion in him, continuing from the corporation into the partnership, we find that in the corporation, as president and treasurer, he had complete and full management and financial control, but that under the partnership such exclusive control wholly disappears, he having no power except as a partner, so that his power was no greater than that of his wife. We find in this situation no such continuation of dominion and control over the subject matter of the gift of stock as would justify nonrecognition of the reality of the gift. We have here a gift of corporate stock, fully effectuated. The petitioner’s income from such stock was divided by the gift, not by the partnership. No case, we think, goes so far as to deny the right to make gifts of property, even though the result is division of income in accordance with ownership thereof. Helvering v. Horst, 311 U. S. 112; Robert P. Scherer, 3 T. C. 776. The right to make gifts of one’s property is no “attenuated subtlety.” The result here has been that the owners of such stock duly received a liquidating dividend and went into a partnership therewith. The history of that partnership shows a continuance of the ownership, in equal parts, with no continuation of exclusive powers in petitioner. That the object was to operate a business more economically by saving taxes is, of itself, no reason for nonrecognition of the transaction, if it was real, and not illusory. Mere purpose to avoid tax does not in itself vitiate a transfer of property. Chisholm v. Commissioner, 79 Fed. (2d) 14. Here, the wife owned some of the corporate stock before any idea of partnership arose (indicated by the fadt that after her acquisition of 10 shares the corporate name was changed, the corporation remaining) ; her partnership income is shown to be no substitute for family expenses, since thereafter her former household allowance was increased, instead of decreased, by petitioner; her quite substantial estate was subjected to the hazards of the partnership business, and apparently she made no mean contribution to the acquisition of the stock later received by her when she subjected her rights as insurance beneficiary to a loan in order that such stock might be purchased. With.her husband, she assumed the corporate liabilities in the liquidation. In all this we discern no mere assignment of right to income, but transfer of property rights, later used in a business where the former donor, though managing the business operations much as before, had less dominion and authority than when there was a corporation, in the sense that’his powers were no longer exclusive. He retained neither exclusive control of the property nor exclusive power to dispose-of the income produced thereby (the test suggested in Stockstrom v. Commissioner, 148 Fed. (2d) 491), for though in fact he conducted the business, the wife rendering no assistance, that is by no means the same as exclusive control of the property, for the articles of partnership plainly negative exclusive control in either partner; and such articles also distinctly deprive him of any exclusive power to dispose of the income. In fact, even the management of the business operations is not assured to the petitioner by the articles of partnership — thus distinguishing such cases as Mead v. Commissioner, 131 Fed. (2d) 323, where active management of the business and unlimited authority to conduct its affairs as he desired was reserved by the articles to the husband. Though the case was not one involving gift of corporate stock prior to partnership, we note Lusthaus v. Commissioner, 149 Fed. (2d) 232 (C. C. A., 3d Cir.), where partnership was not recognized; and point out that management of the partnership business “was specifically provided for in the partnership agreement”; also, that it was not until a later year that the bank carrying the company’s account was given the right to accept the wife as a partner, and that the husband continued to file social security tax returns as owner of the business. We see clearly here a distinction from cases where the wife’s rights and powers were by agreement hedged and restricted toward the point of nothingness. We find no reason to tax the petitioner on the entire income of a property and business in which his wife has a clear half interest. We therefore hold that the partnership should be recognized, and that, the partnership being on the basis of a fiscal year ending June 30, 1942, the petitioner is not chargeable with any partnership income during 1941, the calendar year here involved. We hold, also, that the petitioner is taxable upon capital gain realized in the liquidation of only 125 shares of the capital stock, using a cost basis of $10,027.89 used by the Commissioner and agreed to by petitioner. The petitioner also alleged error as to the valuations placed by the Commissioner upon the properties received in liquidation. No proof was offered on the point, therefore $11,149.42, the valuation used by the Commissioner for the property received upon liquidation of 125 shares of stock, is approved, in the calculation of capital gain. Eeviewed by the Court. Decision will be entered under Rude 50.